UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CYNTHIA E. GREEN,

        Plaintiff,

 -against-

TOYOTA MOTOR CREDITCORP, ANDRE M.
POLHILL and LORETTA S. POLHILL

        Defendants.
------------------------------------------------------------------x

MEMORANDUM AND ORDER

07-CV-524 (ENV) (JO)

VITALIANO, D.J.

  This is a tort action brought by plaintiff Cynthia Green ("Green") against Toyota Motor CreditCorp ("TMCC"), Andre Polhill and Loretta Polhill for personal injuries she allegedly sustained from an automobile accident in Brooklyn. Green claims that TMCC is vicariously liable for injuries she sustained as a result of negligence by a driver of a car owned by and leased from TMCC. The case is here on diversity of citizenship.

  TMCC now moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Green fails to state a claim upon which relief can be granted. Specifically, TMCC argues that the so-called Graves Amendment, 49 U.S.C. § 30106, preempts contrary New York state law and bars actions against motor vehicle leasing companies where the claim is founded upon a vicarious liability theory. TMCC also moves pursuant to Fed. R. Civ. P. 11(b)(2) to sanction plaintiff's counsel for making claims that are not "warranted by existing law or the establishment of new law." For the reasons that follow, the Court grants TMCC's motion to dismiss[1] but denies its motion for Rule 11 sanctions against plaintiff.

---

[1] The cover sheets to the parties' memoranda of law state that the submitted motion is one for summary judgment; a

1

## BACKGROUND

On or about November 18, 2004, Green was injured in an automobile accident in Brooklyn, New York. Andre Polhill was the driver of the other car, a 2001 Lexus RX300, leased by and registered to Loretta Polhill. TMCC was the lessor and title owner of the vehicle. On May 18, 2006, Green commenced this action against the defendants in New York State Supreme Court, Kings County. The action was thereafter removed to this Court on the basis of diversity jurisdiction. TMCC is a California corporation involved in the business of leasing motor vehicles in several states, including New York. Loretta and Andre Polhill are New Jersey residents. Green is a resident of New York.[2]

Following removal, TMCC moved to dismiss the complaint on the basis that 49 U.S.C. § 30106 preempted New York state law to the extent New York law allows for recovery against motor vehicle leasing companies on a vicarious liability theory. Collaterally, TMCC sought to sanction plaintiff's counsel for making claims that are not "warranted by existing law or the establishment of new law" and for refusing to voluntarily discontinue the action against TMCC, which "cost unnecessary expenditure of money and time and wasted resources of this court." (Def.'s Mem. 5, July 26, 2007).

---

scheduling order by this Court has also erroneously followed that lead. However, other docket entries and the submissions of the parties themselves have treated this as a motion to dismiss and have not indicated that summary judgment is sought. Therefore, the Court analyzes the parties' claims under Rule 12(b)(6).

[2] Green's tort claims are governed by New York law. Under forum New York law, where the driver and the injured party are domiciled in different states; the applicable rule of law is that of the state where the accident occurred. See Berkan v. Penske Truck Leasing Canada, Inc., 535 F.Supp.2d 341, 344 (W.D.N.Y. 2008) (enumerating the principles articulated in Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972) and its progeny.).

## DISCUSSION

### I. *Standard on Motion to Dismiss*

Rule 12(b)(6) allows a party to assert by motion the defense of failure to state a claim upon which relief can be granted. However, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Dahlberg v. Becker, 748 F.2d 85, 88 (2d Cir. 1984) (internal quotation omitted). The role of the court in considering a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof[,]" Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980), and not to be swayed by the fact that the possibility of ultimate recovery might be remote, Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### II. *Preemption of New York Vehicle and Traffic Law § 388 by the Graves Amendment*

The background and history of the Graves Amendment has been well-chronicled and will not be reiterated here.[3] Enacted on August 10, 2005, this amendment to the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA") provides in relevant part that:

> [a]n owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the

---

[3] See, e.g., Susan Lorde Martin, *Commerce Clause Jurisprudence and the Graves Amendment: Implications for the Vicarious Liability of Car Leasing Companies*, 18 U. Fla. J.L. & Pub. Pol'y 153 (2007); Sigaran v. ELRAC, Inc., No. 350273-2008, 2008 WL 5381494, at *2-3 (N.Y. Sup. Ct. Dec. 23, 2008);

> law of any State or political subdivision thereof, by reason of being
> the owner of the vehicle (or an affiliate of the owner), for harm to
> persons or property that results or arises out of the use, operation,
> or possession of the vehicle during the period of the rental or lease,
> if-
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade
> or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the
> owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). The Graves Amendment applies to all actions commenced on or after August 10, 2005, even if the conduct or harm occurred before the enactment date. 49 U.S.C. § 30106(c). Although the car accident at issue in this case occurred on November 18, 2004, Green's action was filed on May 18, 2006. It is undisputed, therefore, that this case is within the ambit of the amendment. Compare, Stampolis v. Provident Auto Leasing Co., 586 F.Supp.2d 88, 93 (E.D.N.Y. 2008)(finding that an action filed December 27, 2007 was "indisputably governed by the federal statute"), and Flederbach v. Fayman, 57 A.D.3d 474, 475, 869 N.Y.S. 2d. 180, 181 (2d Dep't 2008)(holding that plaintiff's motion to add lessor company as defendant for vicarious liability was not barred by Graves Amendment when action was commenced prior to the Graves Amendment's effective date).

New York's Vehicle and Traffic Law section 388 ("NYVTL § 388") expresses New York's public policy that all motor vehicle owners should be liable for the actions of an operator driving the vehicle with consent, providing in relevant part:

> Every owner of a vehicle used or operated in this state shall be
> liable and responsible for death or injuries to person or property
> resulting from negligence in the use or operation of such vehicle,
> in the business of such owner or otherwise, by any person using or
> operating the same with the permission, express or implied, of such
> owner. Whenever any vehicles as hereinafter defined shall be used
> in combination with one another, by attachment or tow, the person

> using or operating any one vehicle shall, for the purposes of this section, be deemed to be using or operating each vehicle in the combination, and the owners thereof shall be jointly and severally liable hereunder.

N.Y. Veh. & Tr. Law § 388(1). Prior to the enactment of the Graves Amendment, NYVTL § 388 created a cause of action predicated on a theory of vicarious liability against even remote title owners and lessors such as TMCC. The Graves Amendment clearly intended to preempt such a policy as a matter of federal law and bar recovery against car rental and leasing companies based on vicarious liability. See Flagler v. Budget Rent a Car System, Inc., 538 F.Supp.2d 557, 558 (E.D.N.Y. 2008)("There is no question but that the Graves Amendment preempts state laws that impose vicarious liability on businesses that rent or lease vehicles") (citing United States v. Locke, 529 U.S. 89, 109 (2000)). And, to the extent TMCC argues that the Graves Amendment preempts NYVTL § 388 upon which the claim against it is founded, its argument is unassailable.

### III. *Constitutionality of the Graves Amendment*

What remains, of course, is Green's argument that the Graves Amendment is unconstitutional; specifically, that the amendment exceeds Congress's authority under Article I, Section 8 of the United States Constitution ("the Commerce Clause"), which is the source of the power of Congress "to regulate Commerce...among the several states." U.S. CONST. art. 1 § 8, cl. 3. In making her argument, Green relies primarily on the New York Supreme Court, Queens County decision Graham v. Dunkley, 13 Misc.3d 790, 827 N.Y.S.2d 513 (N.Y. Sup. Ct., Queens County 2006). It is, however, a decision that was subsequently reversed by the Appellate Division, Second Department. Graham v. Dunkley, 50 A.D.3d 55, 852 N.Y.S.2d 169 (2d Dep't 2008), *appeal dismissed*, 10 N.Y.3d 835, 859 N.Y.S.2d 607, **889** N.E.2d 484 (2008).

Notwithstanding, this Court is obliged to make its own assessment of constitutionality. To that end, we begin with the identification by the United States Supreme Court of the "three broad categories of activity that Congress may regulate under its commerce power." United States v. Lopez, 514 U.S. 549, 558-59 (1995). First, Congress can regulate "the use of the channels of interstate commerce". Id. at 558. Second, Congress can protect and regulate "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities". Id. Third, Congress can regulate "those activities having a substantial relation to interstate commerce" provided that there is a rational basis for concluding that these activities are affecting interstate commerce. Id. at 558-89; see also Gonzalez v. Raich, 545 U.S. 1, 22 (2005)(finding that where Congress had rational basis for believing that activities, taken in aggregate, would substantially affect interstate commerce, that is sufficient to meet the Lopez's third category for proper regulation under commerce powers).

Even at this date though, there is no binding precedent to guide the Court on the issue presented here. Neither the Supreme Court nor the Second Circuit has ruled on the constitutionality of the Graves Amendment. Numerous other courts have considered this issue and are virtually unanimous in upholding the Graves Amendment as a proper exercise of the commerce power given Congress by the Constitution. See, e.g., Stampolis v. Provident Auto Leasing Co., 586 F.Supp.2d 88, 94 (E.D.N.Y. 2008); Noll v. Avis Budget Group LLC, 2008 WL 4282985, at *2 (E.D.N.Y. Sept. 17, 2008); Flagler, 538 F.Supp.2d at 559; Berkan v. Penske Truck Leasing Canada, Inc., 535 F.Supp.2d 341, 345 (W.D.N.Y. 2008); see also Garcia v. Vanguard Car Rental USA, Inc., 540 F.3d 1242, 1252 (11th Cir. 2008); Jasman v. DTG Operations, Inc., 2008 WL 376774, at *3 (W.D.Mich. Feb.13, 2008); Dupuis v. Vanguard Car

Rental USA, Inc., 510 F.Supp.2d 980, 984-85 (M.D.Fla. 2007); Garcia v. Vanguard Car Rental USA, Inc., 510 F.Supp.2d 821, 837 (M.D.Fla. 2007); Seymour v. Pense Truck Leasing Co., 2007 WL 2212609, at *2 (S.D.Ga. July 30, 2007). Indeed, the Second Department's reversal of the Graham decision heavily relied upon by plaintiff specifically held, in line with the chorus, that the Graves Amendment fell within the second and third categories of Congress's commerce power because it "regulates both instrumentalities of, and things in, interstate commerce" and there was a rational basis to conclude that the renting and leasing of vehicles have a "substantial effect on interstate commerce." Graham, 50 A.D.3d at 61, 852 N.Y.S.2d at 174-75.

This Court now adds its voice in concert with those of the courts above in finding that the Graves Amendment was a proper exercise of Congress's commerce power, as it fits comfortably within the second and third categories. It was altogether reasonable for Congress to determine that car rental and leasing companies, concerning as they do motor vehicles, which are undeniably "instrumentalities of, and things in, interstate commerce," should not be subjected to state by state regulatory regimes that can dramatically burden their operations even if only on an intrastate basis. See, e.g., Flagler, 538 F.Supp.2d at 560 (finding the second category under Lopez satisfied because "Congress could reasonably conclude that shielding rental-car companies from vicarious liability under state tort law would enhance the industry's availability to provide the means for moving people and goods in interstate commerce"); Stampolis, 586 F.Supp.2d at 95 (citing Lopez, 514 U.S. at 558, and collecting cases where automobiles have been found to be "instrumentalities of" as well as "things in" interstate commerce, thereby allowing Congress to regulate leased and rental vehicles, even if "the threat [to them] may come only from intrastate activities").

Furthermore, the Court finds, contrary to Green's assertions, the federal statute also

7

satisfies Lopez's third category, namely, that Congress can regulate "those activities that substantially affect interstate commerce." Here as well, the Court agrees with the clear and well-reasoned decisions in Flagler and Stampolis, among others, in finding that Congress had a rational basis for concluding that vicarious liability laws may, in the aggregate, adversely affect the motor vehicle leasing market. Flagler, 538 F.Supp.2d at 559-60. Vicarious liability regimes can cause leasing companies such as TMCC to cease doing business in states with vicarious liability laws, or to increase the costs of leasing such cars for all consumers—in state and without. Id.; see also Stampolis, 586 F.Supp.2d at 104 (citing other adverse effects vicarious liability regimes could have on car rental and leasing markets that Congress could have rationally relied on); Graham, 50 A.D.3d at 61, 852 N.Y.S.2d at 174-75 (stating that link between vicarious liability rules and interstate commerce is "direct" and that "vicarious liability laws caused lessors to either cease leasing cars in states having them, opting for more expensive balloon note structures, or spread the cost of higher insurance premiums to lease customers nationwide"). These kinds of burdens on interstate commerce are well within the power of Congress to regulate and/or eliminate.

Consequently, there is no question that the Graves Amendment preempts the application of New York's vicarious liability laws against motor vehicle rental and leasing companies. Various New York courts have already acknowledged that the Graves Amendment preempts such actions. Vicarious liability claims against car rental and leasing companies "may no longer be maintained". Graham, 50 A.D.3d at 61, 852 N.Y.S.2d at 174-75. Accordingly, given that the only basis for the claims plaintiff asserts against TMCC is preempted by federal law, the Court must grant TMCC's motion to dismiss.[4]

---

[4] It is uncontested that the pleadings assert no theory of negligence against TMCC outside of that premised on New York Vehicle and Traffic Law § 388. (See Pl. Mem. 10, Sept. 13, 2007).

8

*IV.*  *RULE 11 Sanctions*

The decision to impose Rule 11 sanctions must be based on a standard of objective unreasonableness, see Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000). But, that determination, of course, is committed to the district court's sound discretion. See Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387-88 (2d Cir. 2003)(deferential standard applies); Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir.1999)(standard of review is abuse of discretion). Once a court determines that Rule 11(b) has been violated, it may impose sanctions to deter repetition of such conduct. Fed.R.Civ.P. 11(c)(2); see also Fed.R.Civ.P. 11 advisory committee note to 1993 amendments.

TMCC argues that sanctions are appropriate in this instance because "plaintiff's counsel was sufficiently notified...of that fact that the enactment of the Graves Amendment had banned the New York State's vicarious liability statute." (Def.'s Mem. 15, July 26, 2007). TMCC also alleges that plaintiff's counsel should be sanctioned because he "steadfastly refused to voluntarily discontinue the instant action against TMCC". (Id.).

The Court strongly disagrees with TMCC's reasoning. First, there still is no binding dispositive precedent. Neither the Supreme Court nor the Second Circuit has rendered a decision addressing the constitutionality of the Graves Amendment. In addition, the New York Court of Appeals has declined to address the issue. See Graham v. Dunkley, 10 N.Y.3d 835, 859 N.Y.S.2d 607, 889 N.E. 2d 484 (2008)(dismissing appeal *sua sponte*). Second, and more importantly, at the time plaintiff commenced this action, and through the submission of the dismissal motion for decision, Green's case was bolstered by the decision in Graham, holding the Graves Amendment to be unconstitutional and reaffirming the viability of NYVTL § 388. While the motion court's decision in Graham was eventually reversed, neither plaintiff's case nor her

opposition to the dismissal motion can be considered utterly frivolous or lacking in merit at the time they were advanced. Moreover, despite the fact this Court finds the decisions which uphold the Graves Amendment's constitutionality and preemptive effect to be both compelling and persuasive, they are not binding and their essential reasoning was, of course, rejected by the motion court in Graham. Absent extrinsic proof that plaintiff pursued this case in bad faith, and there is none, the Rule 11 sanctions demanded by TMCC are totally inappropriate. The motion is denied.[5]

## CONCLUSION

TMCC's motion to dismiss for failure to state a claim is granted. The motion for Rule 11 sanctions against plaintiff's counsel is denied. Plaintiff and the remaining defendants are directed on or before March 31, 2009 to contact Magistrate Judge James Orenstein to set a pretrial conference regarding a schedule for discovery and other related matters.

SO ORDERED.

Dated: Brooklyn, New York
       March 25, 2009

ERIC N. VITALIANO
United States District Judge

---

[5] Frankly, if anything, the motion made by TMCC for Rule 11 sanctions against plaintiff's counsel itself comes closer to warranting sanctions under Rule 11. Given the unsettled state of the law prior to submission of the dismissal motion for decision, plaintiff was clearly entitled to her day in court. The Court strongly disapproves of what skates close to the line of *in terrorem* litigation tactics on the part of TMCC.